# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

IN RE: REX TEMPLETON, JR, )
)
    Pertaining to: )
)
v. )   Case No. MC413-019
)
IN RE: POM WONDERFUL LLC )
MARKETING AND SALES )
PRACTICES LITIGATION, )
MDL 2199, C.D. Cal. )

## ORDER

Rex Templeton, Jr. moves "to Quash and/or Modify the Subpoena issued from this Court to [his doctor,] Paul Bradley, M.D." Doc. 2 at 1. He similarly moves to quash a medical records subpoena served upon him. Doc. 1. Pom Wonderful, LLC (Pom), which served the subpoenas, opposes. Doc. 3.

## I. BACKGROUND

Templeton is part of a class action certified in *In re Pom Wonderful LLC.*, 2012 WL 4490860 (C.D. Cal. Sep. 28, 2012) (*Pom*). That court's background description is useful here:

> Defendant POM Wonderful LLC ("Pom") produces pomegranate juice products. (Master Consolidated Complaint ("MCC") at 4 ¶ 4.) Pom's advertisements claim that Pom juice products have a variety of health-related benefits, and that these health claims are supported by tens of millions of dollars in medical research. (MCC at 4 ¶¶ 5–10.) Plaintiffs allege that Pom's claims are false and/or misleading. (*See, e.g.* MCC ¶ 11.) Plaintiffs therefore brought this purported class action, alleging violations of 1) California's False Advertising Law ("FAL"), Cal. Bus. & Prof.Code § 17200, *et seq.*, 2) California's Unfair Competition Law ("UCL"), Cal. Civ.Code § 17200, *et seq.*, and 3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1750, *et seq.*
>
> \* \* \* \*
>
> Given the wide geographical and temporal scope over which Pom disseminated its health claims and the apparent success of Pom's marketing efforts, Plaintiffs need not present individualized evidence of reliance at this stage, as reliance can be inferred.[1]

*Id.* at \* 1, 5 (footnote added); *see also McManus v. Sturm Foods Inc.*, ___ F.R.D. ___, 2013 WL 4510109 at \* 4 (S.D. Ill. Aug. 26, 2013) (inferred reliance at the class level).

The *Pom* court certified a class alleging violations of those California laws. *Pom*, 2012 WL 4490860 at \* 7. Pom then subpoenaed Templeton's medical records. Doc. 1 at 16-21; doc. 2 at 17-21. The subpoenas' sweep is broad -- Pom basically wants Templeton's entire

---

[1] Nevertheless, Templeton does not dispute Pom's showing (doc. 3 at 8) that *he* must demonstrate reliance.

2

medical record, even billing, "from January 1, 2002 to the present." Doc. 1 at 19; doc. 2 at 20.

## II. ANALYSIS

Templeton argues that "[w]hether and what particular medical ailments [he] may have had that may have influenced the initial decision to purchase the Product is not at issue. The issue is whether [Pom] made false and/or misleading representations regarding the health-related benefits of the Product." Doc. 2 at 3.[2] So "[w]hether or not any particular Plaintiff in the [class] was diagnosed or treated for any of the diseases which POM claimed or claims to prevent, mitigate or treat, is not relevant, and any minimal relevancy would be clearly outweighed by the privacy concerns that inherently surround one's medical records." *Id.* at 6. Since delving into his medical records is not justified, Templeton concludes that Pom's subpoena must be quashed. *Id.* at 5-12.

But Templeton's claim, Pom responds, is premised on its product's promised health benefits that plaintiff claims never materialized. Indeed, Pom further contends,

---

[2] Pom says Dr. Bradley has already complied but it won't review that production until this Court has ruled on the instant motion. Doc. 3 at 7 n. 2.

3

[p]laintiff elaborated on his central claim by testifying in deposition that he believed the Juice would mitigate cardiovascular diseases. Under the law, Pom "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Because [Templeton] has put his medical history at issue by claiming that he believed that Pom could treat, cure, mitigate, or prevent specific diseases *and* that the Juice did not provide those health benefits, [his] medical records clearly fall within the category of permissible discovery.

Doc. 3 at 1 (emphasis added).[3]

"Fed. R. Civ. P. 45 does not include relevance as an enumerated reason for quashing a subpoena. It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003); *accord Cofield v. City of LaGrange, Ga.*, 913 F. Supp. 608, 614 (D.D.C. 1996) (federal courts have the authority to quash subpoenas that seek material that is clearly irrelevant). Rule 26(b) expressly permits "discovery regarding *any*

---

[3] Templeton, Pom reminds,

> testified that prior to purchasing the Juice, he had been diagnosed with high cholesterol. *See* Moran Decl., Ex. B (Mar. 14, 2012 Dep. of Rex Templeton, pp. 49:17-20). Plaintiff also testified that he purchased the Juice believing it would prevent heart disease, prostate cancer, age related diseases and erectile dysfunction. *See id.*, p. 58:15-18. Indeed, he drank the Juice because he thought it would not raise his cholesterol and would prevent heart disease. *See id.*, p. 85:2-8. But Plaintiff testified that he did not recall whether or not Pom had any effect on his cholesterol. *See id.*, p. 51:10-14.

Doc. 3 at 2. Templeton refutes none of this.

4

*matter,* not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b) (emphasis added). Relevancy under this rule has been "broadly construed" to encompass "'any possibility' that the information sought may be relevant to the claim or defense of any party." *Transcor*, Inc., 212 F.R.D. at 591.

Federal courts, as do the state courts[4], routinely authorize medical records discovery upon a sufficient relevancy showing. Relevancy, however, is assessed by the degree to which the plaintiff placed his medical condition at issue. *Compare Sandoval v. American Building Maint. Indus., Inc.*, 267 F.R.D. 257, 265-70 (D. Minn. 2007) (defendants in Title VII action in which plaintiffs sought compensatory damages only

---

[4] *Compare Harris v. Tenet Healthsystem Spalding, Inc.*, 746 Ga. App. 623 (2013) (trial court did not abuse its discretion in determining that medical center defendants in medical malpractice action provided good cause for a qualified protective order allowing defendants to conduct *ex parte* interviews with the health care providers who treated deceased patient), *and Porter v. Litigation Mgt., Inc.*, 767 N.E.2d 735 (Ohio App. 8th Dist. 2001) (employer was entitled to discover all of former employee's medical and psychological records from clinic, in employee's wrongful-discharge action; records contained information relevant to employer's defense that employee acted irrationally during time of employment), *with Burns v. Canales*, 2006 WL 461518 at * 2-3 (Tex. App. Feb. 28, 2006) (material that client requested in malpractice action against former attorney, which material included medical records and photographs of attorney taken when attorney was past victim of an assault, were irrelevant to the elements of the malpractice action, and therefore, were outside the scope of discovery, although client asserted that attorney had an obligation to inform him that she had been the victim of a crime that caused her physical and financial damages); 4 AM. JUR. TRIALS 223 (*Motions for Production and Inspection*) (2013).

for emotional distress were entitled to discover medical records reflecting mental health issues and the manifestation of those mental health issues) *with Fairfax Hosp. By and Through INOVA Health Sys. Hosp., Inc. v. Curtis*, 492 S.E.2d 642, 644-45 (Va. 1997) (patient did not manifestly place her medical condition at issue by filing medical malpractice action against hospital in her capacity as administrator for her deceased daughter's estate, such that hospital violated its duty not to disclose patient's confidential medical records by unilaterally disseminating those records to attorney and nurse in connection with underlying malpractice action prior to obtaining consent from patient or determination from judicial officer that patient's medical condition was at issue).

Even if a plaintiff's physical or mental condition is not in controversy, relevancy can still be shown if his condition constitutes a significant source of his damages. *See Holter v. Wells Fargo and Co.*, 281 F.R.D. 340, 342-43 (D. Minn. 2001) (employer was entitled, in former employee's disability discrimination suit against it, to discover information and medical records bearing on diagnosis or treatment for any of employee's mental, emotional, and psychological issues from date

6

she first was diagnosed with anxiety and depression to present, where employee alleged that she was suffering from impairment involving mental illness, and significant source of her damages arose out of alleged emotional distress caused by employer), *accord*, *Williams v. NPC Intern., Inc.*, 224 F.R.D. 612, 613 (N.D. Miss. 2004).

Pom *conditionally* prevails here. Templeton in essence alleged he had medical problems (high cholesterol, etc.) and when he purchased Pom's juice he relied on Pom's advertised representations that it would help with those problems. At bottom, he is suing Pom for its *false* representations -- that Pom's product did not deliver the health benefits Pom claimed. And Templeton has refused to stipulate that he will not put his medical condition at issue or call any of his physicians as witnesses at trial.[5] That makes his medical records relevant. They in

---

[5] The Court notes this showing from Pom, which Templeton has not refuted:

> Plaintiff states that his physical condition is not at issue, including whether or not he had been diagnosed or treated for any of the diseases and health-related conditions referred to in the MCC and whether that fact influenced his decision to purchase the Juice. *See* Pl.'s Motion, pp. 1-3. However, Plaintiff refused to *stipulate* that he will not put his physical condition at issue or call as witnesses at trial any of his doctors. Moran Decl., ¶ 4. Specifically, Plaintiff refused to agree not to introduce testimony, documents or other evidence related to: (1) whether he has been treated for or diagnosed with any disease or health condition, including, but not limited to, those referred to in the MCC; (2) whether he purchased the Juice to treat, cure, or mitigate any disease or health

theory could show, for example, that the juice in some way *did* work. *See Stanley v. Bayer Healthcare LLC*, 2011 WL 5569761 *2-3 (S.D. Cal. Nov. 16, 2011) (directing plaintiff to provide gastrointestinal-health-based medical records to defendant sued by plaintiff for making fraudulent digestive benefits and improved immune health claims about its "Colon Health Probiotic Caps") (citing *Weiss v. AstraZeneca Pharm.*, 2010 WL 3387220 at *14-20 (Cal. App. Aug. 30, 2010) (examining plaintiffs' medical background, including testimony from their physicians, in a false pharmaceutical advertising case)). However, the Court fails to see how plaintiff's medical *billing* bears any relevance, so the subpoenas are quashed to that extent.[6] Also, Pom's subpoenas are quashed outright (and thus, the Court will grant Templeton's quash motion) *if* Templeton,

---

> condition, including, but not limited to, those referred to in the MCC; and (3) whether the Juice had any effect on his health, including, but not limited to, treating, curing or mitigating any disease or health condition, including, but not limited to, those referred to in the MCC. *See id.* Thus, despite his assertion in the Motion, there is a strong possibility that Plaintiff would sandbag Pom at trial, attempting to bring his health into the picture, accompanied by some contrived explanation for the reversal. Pom would be irreparably prejudiced by such gamesmanship if prevented from obtaining discovery related to Plaintiff's physical condition in the form of his medical records that he put directly at issue.

Doc. 3 at 5-6 (emphasis added).

[6] Conceivably the medical bills could reveal coding showing what a treatment was for. The Court will reconsider if Pom clarifies that point.

8

within 11 days of the date this Order is served, stipulates "that he will not put his physical condition at issue or call as witnesses at trial any of his doctors." *Supra,* n. 5.

## III. CONCLUSION

Rex Templeton, Jr.'s motions to quash (docs. 1 & 2) are **GRANTED** in part (no billing shall be produced) and otherwise **DENIED** without prejudice to his right to renew them[7] upon his filing of the above-noted stipulation.

**SO ORDERED** this 30th day of September, 2013.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[7] Should he then prevail, Pom must turn over to Templeton the medical records that Dr. Bradley already produced to it.

9